1

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3      - - - - - - - - - - - - - X

 4   UNITED STATES OF AMERICA,     :   22-CR-459(KAM)

 5           Plaintiff ,           :
                                       United States Courthouse
 6        -against-                :   Brooklyn, New York

 7   SINMYAH AMERA CEASAR,         :
                                       October 14, 2022
 8           Defendant.            :   2:00 p.m.
        - - - - - - - - - - - - - X

 9

10

11                    TRANSCRIPT OF PLEADING
             BEFORE THE HONORABLE KIYO A. MATSUMOTO
12                UNITED STATES DISTRICT JUDGE

     APPEARANCES:
13

14   For the Government:         BREON PEACE
                                 United States Attorney
15                               BY: IAN RICHARDSON,
                                 Assistant United States Attorney
16                               271 Cadman Plaza East
                                 Brooklyn, New York
17

18   For the Defendant:         FEDERAL DEFENDERS OF NEW YORK, INC
                                One Pierrepont Plaza, 16th Floor
19                              Brooklyn, New York
                                BY: SAMUEL I. JACOBSON, ESQ.
20

21   Court Reporter:            Andronikh M. Barna
                                225 Cadman Plaza East
22                              Brooklyn, New York
                                (718) 613-2178
23

24   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
25
```

2

1          THE COURTROOM DEPUTY:  Good afternoon.

2          This is criminal cause for a pleading.  Docket

3     22-CR-459, U.S.A. versus Sinmyah Ceasar.

4          Will the government's attorney please state your

5     appearance.

6          MR. RICHARDSON:  Good afternoon, Your Honor.

7          Ian Richardson for the United States and I'm joined

8     at counsel table by Senior United States Probation Officer

9     Michael Imrek.

10          THE COURT:  Thank you.  Good afternoon.

11          MR. JACOBSON:  Good afternoon, Your Honor.

12          Sam Jacobson, Federal Defenders, for Ms. Ceasar, who

13     is present next to me.

14          THE COURT:  Ma'am, good afternoon.

15          Do you speak and understand English without any

16     difficulty?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Please raise your right hand and take an

19     oath to tell the truth.

20          (Defendant sworn.)

21          THE COURTROOM DEPUTY:  Thank you.

22          THE COURT:  Ms. Ceasar, before I decide whether to

23     accept your plea of guilty to an information charging you with

24     failure to appear, there are a number of questions I must ask

25     you in order to assure myself that your plea is valid.  So if

3

1    you do not understand my question or if you want to confer

2    with your lawyer or if you need clarification, please let me

3    know.

4                    All right, ma'am?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  Because you have been sworn to tell the

7    truth, do you understand that any answer to my questions will

8    be subject to penalties of perjury or making false statements

9    if you do not answer truthfully?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  Would you tell me your full legal name,

12   please.

13                   THE DEFENDANT:  Sinmyah Amera Ceasar.

14                   THE COURT:  And Ms. Ceasar, how old are you?

15                   THE DEFENDANT:  Twenty-seven.

16                   THE COURT:  Would you tell me what schooling or

17   education you have had, please?

18                   THE DEFENDANT:  I'm obtaining my GED.

19                   THE COURT:  And do you have any difficulty reading,

20   writing, speaking or understanding English?

21                   THE DEFENDANT:  No, Your Honor.

22                   THE COURT:  Mr. Jacobson, have you been able to

23   communicate effectively with your client in the English

24   language?

25                   MR. JACOBSON:  Yes, I have, Your Honor.

4

1          THE COURT:  Have you detected any difficulty on your

2    client's part with the English language?

3          MR. JACOBSON:  No.

4          THE COURT:  And just let me confirm, Ms. Ceasar, are

5    you a United States citizen?

6          THE DEFENDANT:  Yes, your honor.

7          THE COURT:  Ms. Ceasar, are you presently or have

8    you recently been under the care of any physician or

9    psychiatrist or other mental health practitioner?

10          THE DEFENDANT:  I get therapy at MDC Brooklyn.

11          THE COURT:  All right.  Thank you.

12          And in the past 24 hours, have you taken any

13    medicine or pills, narcotic drugs or consumed any alcohol?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  So your therapy does not involve any

16    medications; is that correct?

17          THE DEFENDANT:  Oh.  For psych meds, yes.

18          THE COURT:  Okay.  When did you last take your psych

19    meds?

20          THE DEFENDANT:  A day ago.  I didn't take it this

21    morning.

22          THE COURT:  And do those medications affect your

23    ability to think clearly and to understand what is going on

24    around you?

25          THE DEFENDANT:  No, Your Honor.

5

1          THE COURT:  Have you been hospitalized or treated,

2    other than your therapy, for any mental or emotional problems

3    or addiction to narcotic drugs or alcohol?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  And do you feel today, as you sit here,

6    that your mind is clear?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand why you are here,

9    ma'am?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And do you understand what is going on

12    around you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Mr. Jacobson, have you discussed the

15    matter of pleading guilty with your client?

16          MR. JACOBSON:  Yes, I have.

17          THE COURT:  Does she understand the rights that she

18    would be waiving if she were to plead guilty?

19          MR. JACOBSON:  She does, Your Honor.

20          THE COURT:  In your view, given your conversations

21    with your client, do you believe she is capable of

22    understanding the nature of the proceedings we are holding

23    right now?

24          MR. JACOBSON:  Yes.

25          THE COURT:  Do you have any doubt as to whether or

6

1    not Ms. Ceasar is competent to plead at this time?

2                MR. JACOBSON:  No, Your Honor.

3                THE COURT:  Have you advised Ms. Ceasar of the

4    maximum and minimum sentence, fine, and other penalties that

5    she may face if she does plead guilty to the information?

6                MR. JACOBSON:  I have.

7                THE COURT:  And have you also discussed with her how

8    the advisory Sentencing Guidelines will be considered in

9    determining her sentence?

10               MR. JACOBSON:  Yes, I have.

11               THE COURT:  Ms. Ceasar, have you received a copy of

12   the information in the case, United States versus Ceasar,

13   22-CR-459?

14               THE DEFENDANT:  Yes, Your Honor.

15               THE COURT:  Have you discussed the charges in the

16   information with your lawyer?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Do you understand the charges?

19               THE DEFENDANT:  Yes.

20               THE COURT:  Would you like me to read the charges to

21   you or do you understand them?

22               THE DEFENDANT:  I understand them.

23               THE COURT:  Ma'am, I will explain the charges in a

24   moment, but first I want to advise you and remind you that you

25   have the right to counsel throughout all of these proceedings.

7

1  And again, if you wish to confer with Mr. Jacobson, you may do

2  so.

3          Have you had an adequate opportunity to discuss the

4  information and the decision of whether you are going to plead

5  guilty with your lawyers?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Are you satisfied with the

8  representation that they have provided to you?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  All right, ma'am.  Let me just tell you

11  that you have been charged, by an information, with failure to

12  appear.

13          Specifically, on or about August 25th, 2021, you had

14  been released pending further proceedings and your conditions

15  of your release had been set.  And you are charged with

16  knowingly and willfully failing to appear before the Court on

17  April 25th, as required by the conditions of your release in

18  United States versus Ceasar, Docket No. 17-CR-48 and

19  United States versus Ceasar, Docket No. 19-CR-117.  This

20  offense is punishable by imprisonment of 15 years or more.

21          Do you understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Now, ma'am, you have a constitutional

24  right to be charged by an indictment issued by the grand jury,

25  but you can waive that right and consent to being charged by

8

1    an information of the United States Attorney.

2          Instead of an indictment in this particular case,

3    the felony charge of failure to appear has been brought

4    against you by the United States attorney, who will file an

5    information of these charges.  Unless you waive your right to

6    be indicted, you may not be charged with a felony under

7    federal law unless a grand jury finds, by return of an

8    indictment, that there is probable cause to believe that a

9    crime has been committed and that you committed that crime.

10   If you do not waive your right to be indicted, the government

11   may present the evidence to the grand jury and ask the grand

12   jury to indict you.

13          A grand jury is compromised of at least 16 but not

14   more than 23 citizens of the Eastern District of New York.

15   They are not employees of the U.S. Attorney's Office or the

16   federal agencies.  In fact, they are citizens of this District

17   and at least 12 of those grand jurors must find that there is

18   probable cause to believe that you committed an offense before

19   you may be charged and indicted.  The grand jury would vote

20   whether or not to indict you and they might vote not to do so.

21          Do you understand?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  If you do waive your right to an

24   indictment by the grand jury, this case will proceed against

25   you on the U.S. Attorney's information just as though you had

9

1    been indicted.

2              Now, Ms. Ceasar, have you discussed the matter of

3    waiving your right to be indicted by a grand jury with your

4    lawyer?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  And Mr. Jacobson, are you satisfied that

7    your client understands her right to be indicted?

8              MR. JACOBSON:  Yes, Your Honor.

9              THE COURT:  Do you have any questions about your

10   right to be indicted, Ms. Ceasar?

11             THE DEFENDANT:  No, Your Honor.

12             THE COURT:  Do you wish to waive your right to be

13   indicted?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Did anyone threaten you or promise you

16   anything in exchange for your agreement not to be indicted?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  Do you wish to waive your right to be

19   indicted and proceed by way of the U.S. Attorney's

20   information?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Mr. Jacobson, do you know of any reason

23   why your client should not waive her right to be indicted?

24             MR. JACOBSON:  No, I do not.

25             THE COURT:  All right.

1        Now, ma'am, I have before me a document entitled
2   Waiver of Indictment.  There's a signature above the line that
3   says "defendant's signature."  I would like to ask you whether
4   your signature appears on that line.
5        THE DEFENDANT:  Yes.
6        THE COURT:  Ma'am, before you signed this document,
7   did you have a chance to review what it says and to read it?
8        THE DEFENDANT:  Yes.
9        THE COURT:  Did you have a chance to discuss it with
10  Mr. Jacobson or Ms. von Dornum?
11       THE DEFENDANT:  Yes.
12       THE COURT:  And let me just say that I am finding,
13  based on what you have said to me here today, that you
14  knowingly and voluntarily are waiving your right to be
15  indicted.  I accept your waiver and we will proceed then with
16  this matter.
17       Now, I have advised you of the charges set forth in
18  the information.  That process is called an arraignment.  Do
19  you have any questions you would like to ask me about the
20  charge in the information, ma'am?
21       THE DEFENDANT:  No, Your Honor.
22       THE COURT:  All right, ma'am.
23       As I discussed with you, you have the right to
24  counsel.
25       And you have indicated that you are satisfied and

11

1   have had adequate time to discuss this matter with your

2   lawyers; is that correct?

3            THE DEFENDANT:  Yes.

4            THE COURT:  You do have the right to plead not

5   guilty to the information.

6            Do you understand?

7            THE DEFENDANT:  Yes.

8            THE COURT:  If you do plead not guilty to the

9   information, under the United States laws and Constitution you

10  would be entitled to a speedy and public trial by a jury, with

11  the assistance of your attorney, on the charges set forth in

12  the information, 22-CR-459.

13           Do you understand?

14           THE DEFENDANT:  Yes.

15           THE COURT:  At the trial you would be presumed to be

16  innocent and the government would have to overcome that

17  presumption and prove you guilty beyond a reasonable doubt

18  with competent evidence as to each and every element of the

19  offense charged.  If the government failed to prove you guilty

20  beyond a reasonable doubt, the jury would have the duty to

21  find you not guilty.

22           Do you understand?

23           THE DEFENDANT:  Yes.

24           THE COURT:  That is why sometimes in a criminal case

25  jurors may return a not guilty verdict even if they believe

12

1   the defendant on trial probably committed the offense charged.

2   When a jury returns a not guilty verdict, they are not

3   necessarily finding that the defendant is innocent, but rather

4   they may not have been unanimously convinced beyond a

5   reasonable doubt that the defendant is guilty.

6           Do you understand the difference?

7           THE DEFENDANT:  Yes.

8           THE COURT:  During the course of the trial, the

9   witnesses for the government would have to come to court and

10  testify in your presence.  Your attorney would have the right

11  to cross-examine those witnesses and to object to all of the

12  evidence offered against you by the government.  And although

13  you would have the right, you would have no obligation to

14  present evidence and to compel witnesses to come to court and

15  testify in your defense.

16          Do you understand?

17          THE DEFENDANT:  Yes.

18          THE COURT:  At the trial, although you would have

19  the right to testify if you chose to do so, you could not be

20  required to testify.  Under the United States Constitution,

21  you cannot be compelled to incriminate yourself.  So if you

22  decided to go to trial and decided not to testify, I would

23  instruct the jury that they could not hold that against you or

24  even discuss that fact during their deliberations.

25          Do you understand?

13

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you do plead guilty and I accept your

3    guilty plea, you will be giving up your constitutional right

4    to a jury trial and the other rights I have just described.

5    There will be no further trial of any kind and no right to

6    appeal from the judgment of guilt entered against you.  You

7    will be convicted based upon your plea of guilty during the

8    proceeding we are holding right now, and the government will

9    be free of any responsibility to prove anything about what you

10   did in connection with the charge in the information.

11         Do you understand?

12         THE DEFENDANT:  Yes.

13         THE COURT:  If you did proceed to trial and were

14   convicted by the jury's verdict, you would have the right to

15   ask the Court of Appeals to review the legality of all of the

16   proceedings leading up to your conviction.  But when you enter

17   a guilty plea, what you are doing is substituting your own

18   words for the jury's verdict.  And when you do that, you give

19   up your right to bring an appeal or other legal challenge to

20   your conviction or the judgment of guilt entered against you.

21         Do you understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  If you do plead guilty, I will be asking

24   you questions about what you did in order to satisfy myself

25   that you are, in fact, guilty of the charge to which you seek

1  to plead guilty.  You will have to answer my questions

2  truthfully and acknowledge your guilt.  In that process, you

3  will be giving up your right not to incriminate yourself.

4          Do you understand?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Are you willing to give up your right to

7  a trial and the other rights I have just described?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Now, let me just ask you, it is my

10  understanding that you have entered into a plea agreement with

11  the United States.  We have marked it as Court Exhibit No. 1.

12  I would like to ask you whether your signature appears on the

13  last page of that agreement.

14          THE DEFENDANT:  Yes.

15          THE COURT:  Before you signed this agreement, ma'am,

16  did you have a chance to talk with Mr. Jacobson or Ms. von

17  Dornum about all of the terms in the agreement?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Did you have a chance to read it?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And do you understand what this

22  agreement provides, ma'am?

23          THE DEFENDANT:  Yes.

24          THE COURT:  By signing this agreement, do you intend

25  to indicate that you understand these terms and that you agree

15

1   to those terms?

2         THE DEFENDANT:  Yes.

3         THE COURT:  Now I am going to just review with you

4   some of the portions of this agreement that I think you should

5   be aware of.

6         First of all, if you look at paragraph 1, the

7   agreement provides that you are going to waive indictment, as

8   you have just done, and you will plead guilty to an

9   information which charges you with failure to appear.

10        You also agree that you committed the following

11   violations of supervised release, as charged in the violation

12   of supervised release reports dated August 24th, 2021, which

13   is the second VOSR report, and the September 29th, 2021 VOSR

14   report, which is the third VOSR report, and you will plead

15   guilty, pursuant to this agreement, to Violation Nos. 4 and 9.

16        Is that correct?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  All right.  Charge 4 is -- we will talk

19   about that in a moment, but I would also remind you that you

20   also previously, in January of this year, pleaded guilty to

21   violations of your supervised release and you specifically

22   acknowledged and pled guilty to violating the conditions

23   regarding your use of electronic communication services and

24   barring you from contacting convicted felonies without prior

25   approval of the Probation Department.  Those were set forth in

16

1    the first violation of supervised release report and you have

2    not yet been sentenced on those charges.

3           Do you understand?

4           THE DEFENDANT:  Yes.

5           THE COURT:  All right.  So if you do plead guilty to

6    the information, for failure to appear, you face a maximum

7    term of imprisonment of ten years.  There is no minimum term

8    of imprisonment.  You face the maximum supervised release term

9    of three years, which would follow any terms of imprisonment.

10   And if you do not comply with the terms of your supervised

11   release and are found to be in violation, you could be

12   sentenced back to prison for up to two years without any

13   credit for time that you have already spent in prison and

14   without any credit for time that you already spent on

15   supervised release.

16          In addition, ma'am, you would face a $250,000 fine

17   and you would have to pay a $100 mandatory special assessment.

18          The other important thing to know is that the

19   sentence on the failure to appear offense must be served after

20   the sentence that would be imposed for the material support of

21   terrorism offense and the obstruction of justice offense,

22   which is something that I am going to have to deal with in the

23   future because the Second Circuit Court of Appeals has sent

24   the case back for resentencing.

25          Do you understand?

17

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  So this sentence for the failure to

3    appear is going to have to be served after that, meaning not

4    at the same time.

5          Do you understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And there are reasons for that, which I

8    can explain if you would like me to.  That is specifically

9    because you committed the obstruction offense and the failure

10   to appear offense while you were on pretrial release.

11         And the government has stated in your agreement that

12   they believe you will face additional terms of imprisonment of

13   up to ten years for each offense.  So if I am understanding

14   the government's position correctly, you will receive -- you

15   are likely to face an additional ten years for the obstruction

16   and the failure to appear offense.

17         Is that correct?

18         MR. JACOBSON:  A maximum of ten years, Your Honor.

19         THE COURT:  Right.

20         MR. JACOBSON:  There's no minimum.

21         THE COURT:  Okay.

22         MR. RICHARDSON:  That's correct, Your Honor.  Under

23   Title 18 United States Code Section 3147(1), there is a

24   mandatory consecutive term of imprisonment of up to ten years

25   for each of those offenses.

18

1          I will just note that we have a dispute with the

2     defense about whether or not an additional term under Section

3     3147 would apply to this failure to appear offense.  But when

4     we get into the guidelines discussion, Your Honor, ultimately

5     it just affects the overall guideline and the top end of the

6     overall guideline.

7          THE COURT:  All right.  So what I am hearing

8     Mr. Richardson say, and I think it is correct, there is no

9     mandatory minimum.  I am not forced to give you a mandatory

10    term of imprisonment of some, minimum amount.

11         Do you understand?

12         THE DEFENDANT:  Yes, Your Honor.

13         MR. RICHARDSON:  Just to make a quick note on that,

14    Your Honor.

15         That is accurate.  I believe that the way the

16    guidelines direct the Court to handle a mandatory consecutive

17    term under the Section 3147 is to apportion some period of the

18    sentence to serve consecutive.  So a consecutive sentence must

19    be imposed, but there's no mandatory amount of time that the

20    Court must impose on that.

21         THE COURT:  Okay.

22         Did you understand what the government's attorney

23    just described?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Okay.  Now, under the Sentencing Reform

1   Act of 1984, the United States Sentencing Commission issued

2   guidelines for judges to consult in determining a sentence in

3   a criminal case.  The United States Supreme Court has decided

4   that those guidelines are not mandatory but rather advisory,

5   so I must consult those guidelines as well as the factors set

6   forth in the Criminal Code at 18 U.S. Code Section 3553(a)(1)

7   through (7).  The nature and circumstance of the offense; your

8   prior criminal history; whether a sentence will encourage you

9   to be deterred from further criminal conduct and would deter

10  others from criminal conduct; whether it would protect the

11  public and serve the interests of sentencing; and also to

12  avoid disparities, meaning that you do not get a sentence that

13  is grossly at odds with someone else in a similar situation.

14  So those are the types of factors that I would consider.

15        Now, your agreement at paragraph 2 advises you that

16  the guidelines are not mandatory.  And it also sets forth the

17  government's estimated offense level only for this offense.

18  It does not incorporate or include the other offenses for

19  which you stand convicted or the violation of supervised

20  release.

21        So at paragraph 2, the government estimates that for

22  the failure to appear offense just on its own and without

23  regard to the other offenses, you would start with a base

24  offense level of 6.  There would be an enhancement because the

25  underlying offense for which you were convicted is punishable

20

1   for more than 15 years and, in addition, you would get an

2   enhancement of three points because the failure to appear

3   occurred while you were on pretrial release.  That would bring

4   you to a total offense level of 18.  But because you are

5   accepting responsibility and pleading guilty by today, the

6   government will agree that you should receive three points

7   off, which would bring you to level 15.  A level 15 under the

8   advisory guidelines yields a range of imprisonment between 21

9   and 27 months, and that is assuming that you fall within

10  Criminal History Category II.

11            Now, Criminal History Category II that is stated

12  here is different from the criminal history category that is

13  stated in your violation of supervised release report, which

14  refers back to your original convictions, the material support

15  for terrorism and the obstruction of justice.

16            Do you understand?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  Because the material support for

19  terrorism adds a lot of enhancements, you end up in a higher

20  criminal history category for that offense than you do for

21  this offense.

22            Do you understand?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  All right.  Now, you are agreeing

25  also -- you are agreeing to the calculation of the guidelines

1    that are set forth in this agreement and you agree not to seek

2    further hearing on any disputes you have about the

3    calculations of the guidelines for this offense.

4            Do you understand?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Have you discussed this provision with

7    your lawyer, ma'am?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Have you also discussed with your lawyer

10   how the advisory guidelines may be considered in your case?

11           THE DEFENDANT:  Yes.

12           THE COURT:  All right.  And I do not mean just for

13   this case.  I mean for all of your cases, have you discussed

14   that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Have you also discussed the statutory

17   factors, the 3553(a) factors and how those might be evaluated

18   in connection with sentencing for those other cases and this

19   case?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Now, I will not be imposing sentence on

22   you until after Probation prepares a presentence report.

23           I know you have prior presentence reports and I know

24   the judge who had your original cases did a very, very careful

25   review of you and your history and heard a lot of evidence

22

1  from experts and made a decision about what your sentence

2  should be.  The government appealed that sentence and the

3  Second Circuit decided that that sentence had to be reimposed,

4  that I had to evaluate certain other factors and resentence

5  you on the original Judge Weinstein sentences.

6          Do you understand?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  But in any event, I am hoping that

9  Mr. Imrek or one of his colleagues will prepare a global,

10 universal, comprehensive presentence report, which you will

11 have a chance to review and object to and to challenge.

12         And then I will review all of that material and will

13 make my own independent advisory guidelines calculation.  Once

14 I do that, I am authorized to sentence you -- find a sentence

15 that is more or less severe than that called for by the

16 guidelines, so long as I follow the Criminal Code's

17 requirements regarding any mandatory sentences or consecutive

18 sentences.

19         Do you understand?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  I would also like to point out another

22 important provision of your agreement with the government.

23         If you look at paragraph 5, ma'am, you are agreeing

24 in your agreement not to file an appeal or otherwise challenge

25 your sentence if I impose a sentence on the material support

23

1    offense, the obstruction offense or the failure to appear

2    offense of 386 months or below.  Now, I am sure you can do the

3    math by just dividing by 12, but that means that you may not

4    file an appeal if I impose a sentence of 386 months or less.

5            Do you understand that you have given up your right

6    to bring an appeal for a sentence if it is 386 months or less?

7            THE DEFENDANT:  Yes.

8            THE COURT:  And I believe my math is correct, I

9    believe that comes to 32 years and change.

10           Is that right?

11           386 divided by 12 is 32 years.

12           So you are giving up your right to appeal if I

13   impose a sentence of 32 years or less.

14           Do you understand?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Have you discussed this provision with

17   your lawyer?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And there may have been prior plea

20   agreements that you entered into in 2019 where you had agreed

21   to give up your appellate rights if you received a sentence of

22   365 months, but now this new agreement replaces that.

23           Do you understand in terms of the waiver of your

24   appellate rights?

25           THE DEFENDANT:  Yes.

24

1          THE COURT:  Mr. Jacobson, are you satisfied that

2     your client understands her waiver of appellate rights?

3          MR. JACOBSON:  Yes, Your Honor.

4          THE COURT:  Does Mr. Jacobson agree generally with

5     the government's estimated guidelines offense ranges as set

6     forth in this agreement?

7          MR. JACOBSON:  We do, yes.

8          There is one disagreement about the statutory

9     maximum sentence that's set forth at the end of paragraph 5 on

10    page 6 of the plea agreement, and that's with respect to

11    whether a 3147 consecutive enhancement applies to the failure

12    to appear offense.

13         MR. RICHARDSON:  I think Mr. Jacobson is referring

14    to the end of paragraph 3, Your Honor, the consolidated

15    guideline calculation for all of the defendants.

16         THE COURT:  You mean the last sentence of paragraph

17    3 where the range is stated at the low end and the high range

18    for all three offenses?

19         MR. RICHARDSON:  That's correct, Your Honor.

20         As I was explaining when you were discussing the

21    statutory maximum penalties applicable in this case, there is

22    a dispute between the defense and the government about whether

23    or not a Section 3147 sentence must follow a conviction for

24    this violation, for the failure to appear offense.

25         Because of the way the guidelines work, when

1  Ms. Ceasar is sentenced at a consolidated sentencing

2  proceeding on all of the violations, the applicable guidelines

3  range is going to be driven by the guidelines calculation for

4  the material support events.  And what that means is that this

5  additional statutory maximum authorized term only impacts the

6  guidelines range at the high end of the guideline.  The

7  statutory maximum caps the guideline range.

8          So in the government's calculation of the guidelines

9  range, the defendant's statutory maximum is 840 months, so the

10 government's estimate is 360 months to 840 months.  With the

11 defense estimate, it is 360 months to 720 months.  We've

12 agreed to disagree on that point for the purposes of this plea

13 agreement.  And so what we have agreed in paragraph 3 at the

14 end is that the guidelines is going to recommend a sentence in

15 a range of, at the low end, 360 months and, at the high end,

16 at least 720 months.

17         So that's the agreement among the parties and I

18 think that fairly states what the defense and the government

19 have agreed to in terms of the waiver and the stipulation to

20 the guideline.

21              THE COURT:  Mr. Jacobson, do you want to be heard?

22              MR. JACOBSON:  We agree with that, Judge.

23              THE COURT:  All right.  Regardless of what the

24 parties agree to, Ms. Ceasar, ultimately I have to do the

25 calculations and take the responsibility for sentencing you.

26

1    So I just want you to know that even though Mr. Jacobson

2    agrees generally with the estimates and even though you have

3    agreed specifically with the terms of this plea agreement,

4    that ultimately your sentence is my responsibility.

5              Do you understand?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  All right, ma'am.

8              Also, in the federal system, parole has been

9    abolished.  So if you are sentenced to prison, you will not be

10   able to be released on parole.

11             Do you understand?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And what I would like to really point

14   out, ma'am, is that if you receive a sentence that is not what

15   you would hope for or what you would expect, that that will

16   not provide a basis for you to withdraw your guilty plea.

17             Do you understand?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you have any questions of me or

20   Mr. Jacobson before we move forward?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  Are you ready to plead at this time?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Mr. Jacobson, do you know of any reason

25   why your client should not plead guilty to the information?

1          MR. JACOBSON:  No, Your Honor.

2          THE COURT:  Are you aware of any viable legal

3    defenses that are causing you to counsel Ms. Ceasar not to

4    plead guilty to the information?

5          MR. JACOBSON:  No.

6          THE COURT:  Ms. Ceasar, what is your plea to the

7    information, guilty or not guilty?

8          THE DEFENDANT:  Guilty.

9          THE COURT:  And are you making the plea of guilty

10   voluntarily and of your own free will?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Did anyone threaten you or force you to

13   plead guilty?

14         THE DEFENDANT:  No, Your Honor.

15         THE COURT:  Other than the agreement that you

16   entered with the government, did anyone make any promise to

17   you that caused you to plead guilty?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  Did anyone make any promise to you about

20   what your sentence will be?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  All right.  What I will ask you to do,

23   ma'am, is state in your own words what you did in connection

24   with the charge, failure to appear, set forth in the

25   information.

28

1          THE DEFENDANT:  While my violations of supervised

2    release were pending, I was released on supervision with

3    electric -- sorry, electronic monitoring.  I knew I had a

4    court appearance scheduled for August 25th, 2021 in the

5    Eastern District of New York.  I removed my GPS monitoring

6    device without permission from Probation or the Judge.  I

7    knowingly failed to appear in court as required.

8          THE COURT:  All right.  So you knew that because of

9    the prior violations of supervised release, you had been

10   permitted to remain on release with certain conditions; is

11   that correct?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And you knew one of those conditions

14   involved returning to court when ordered, correct?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And you also knew that you were wearing

17   a GPS device that would assist the Probation Department with

18   monitoring your whereabouts, correct?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And you knew that on August 25th, or

21   approximately that date, you had a court date here in this

22   courthouse; is that correct?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Yet you decided to remove your bracelet,

25   your anklet, and knowingly did not appear in court on the day

29

1   as ordered; is that correct?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Is there anything else Mr. Richardson

4   wants to hear from the defendant as to her allocution?

5            MR. RICHARDSON:  Your Honor, just as a point of

6   clarification, I believe the August 25th, 2020 appearance was

7   remote and she failed to appear remotely as required by the

8   Court.  I just want to clarify that.

9            THE COURT:  All right.  I might have said in the

10  courthouse.  I was here in the courthouse and I was going to

11  talk to you remotely, but there was -- no, I think she was

12  coming here.  She was coming here.

13           MR. IMREK:  It was in person.

14           THE COURT:  She was coming in person because we

15  expected her to be released from her place of residence at a

16  time certain and she left early.

17           MR. JACOBSON:  Yes.  I think it was going to be her

18  first in-person appearance.

19           THE COURT:  Yes.

20           MR. RICHARDSON:  Well, then I stand corrected.  I

21  apologize, Your Honor.

22           THE COURT:  Okay.  And that is how we had a problem,

23  because she left earlier than expected.

24           Is there anything else you would like to hear

25  Mr. Richardson, from her regarding her allocution?

30

1          MR. RICHARDSON:  No, Your Honor.  I believe that

2     satisfies the elements of the offense.

3          THE COURT:  Mr. Jacobson, is there anything you

4     would like to add to clarify?

5          MR. JACOBSON:  No, Judge.  I would just add that

6     that allocution also was designed to cover Charge 9 of the

7     VOSR, and I think it's sufficient for that as well.

8          THE COURT:  Do you agree with that, Mr. Richardson?

9          MR. RICHARDSON:  Factually, she admitted she cut off

10    her bracelet and I think that does satisfy the elements of

11    Charge 9.

12         THE COURT:  Well, I did ask her specifically, but

13    just to be clear and avoid all doubt.

14         Did you cut off your bracelet or otherwise find a

15    way to remove it, ma'am?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And this was the GPS bracelet, correct?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And you knew you were not supposed to

20    remove it; is that correct?

21         THE DEFENDANT:  Yes.

22         THE COURT:  All right.  We are going to talk about

23    her violation of supervised release charges in a minute.

24         But Ms. Ceasar, based upon what you told me during

25    this proceeding, I find that you are acting voluntarily and

1   with knowledge and that you fully understand your rights and

2   the consequences of your plea of guilty to the information.  I

3   find that you have knowingly and voluntarily waived your right

4   to be indicted on the charges in the information and I,

5   therefore, accept your waiver of indictment and your plea of

6   guilty to the information.

7           We have scheduled your sentencing date on this

8   offense for February 9th at 11:00 a.m.

9           The parties are to follow Federal Rule of Criminal

10  Procedure 32 regarding any objections to the PSR.  Those

11  should be filed -- I'm sorry.  They need not be filed on the

12  docket, but they should be served on opposing counsel,

13  Probation and my chambers.  Defense counsel must provide any

14  objections or corrections to the PSR within two weeks of

15  receipt of the PSR.  The government will respond one week

16  thereafter.

17          With regard to any sentencing motions or submissions

18  apart from the PSR objections, those must be filed on the

19  docket.  If there is personal information or medical

20  information or names of minor children or others, other

21  minors, those names should be redacted from the public docket

22  and an unredacted version should be filed under seal on the

23  docket.

24          Courtesy copies of your sentencing submissions, I

25  would say two courtesy copies should be delivered to my

32

1   chambers and a copy served on Probation.  I would like the

2   defense submissions by January 20th.  The government's

3   responses or submissions will be due January 27th.  And any

4   reply by the defense is due February 3rd.

5          Is there anything else I need to address regarding

6   the failure to appear charge?

7          MR. RICHARDSON:  I don't believe so, Your Honor.

8          THE COURT:  All right.  Thank you.

9          Do you need a little break, Ms. Ceasar, or are we

10  ready to go forward with the next matter?

11         THE DEFENDANT:  You can continue.

12         THE COURT:  Pardon me?

13         THE DEFENDANT:  You can continue.

14         THE COURT:  Okay.

15         All right.  Let's do the next violation of

16  supervised release.

17         (Matter concluded.)

18

19              *     *     *     *     *

20

21  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

22

23   /s/ Andronikh M. Barna              October 28, 2022
    _____  _____
24      ANDRONIKH M. BARNA                  DATE

25